HOME INSURANCE COMPANY OF ILLINOIS, Plaintiff-Appellee, v. CARL HOOPER *et al.*, Defendants-Appellants.

First District (6th Division) No. 1—95—3056

Opinion filed January 23, 1998.

Steinberg, Polacek & Goodman, of Chicago (Bradley D. Steinberg and Gregory P. Preves, of counsel), for appellants.

Purcell & Wardrope, Chartered, of Chicago (Sandra Young and Howard J. Fishman, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, the Home Insurance Company of Illinois (Home), filed a declaratory judgment action to determine whether a self-insured retention provision of an insurance policy issued to Lester Engineering Corporation (Lester) was a condition precedent requiring Lester to make actual payment of the first $250,000 in damages before Home was liable for the policy limits of the subject liability policy. The defendants, Carl Hooper and Deborah Hooper (Hoopers) and Lester, moved for summary judgment, alleging, *inter alia*, that the self-insured retention provision of the insurance policy was invalid as a violation of section 388 of the Illinois Insurance Code (215 ILCS 5/388 (West 1994)) and that the language of the policy provided drop down coverage paying Lester's self-insured retention if Lester became bankrupt or otherwise insolvent. The trial court granted Home's motion for summary judgment. The defendants appeal.

For the following reasons we reverse in part, affirm in part, and remand with instructions.

The pertinent facts adduced from the record are as follows. Carl Hooper (Hooper) sustained personal injuries on January 27, 1989,

while performing work on a dye casting and injection molding machine which was manufactured by Lester Engineering Corporation (Lester). Plaintiff, Home Insurance Company of Illinois (Home), previously issued an insurance policy to Lester for the policy period of February 14, 1988, to February 14, 1989. The policy provided comprehensive liability and product liability coverage up to $1 million per occurrence and was in full force and effect at the time Hooper suffered his injury. The policy was also subject to a self-insured retention of $250,000 per occurrence and $750,000 in aggregate. Application of Lester's self-insured retention is set forth in endorsement No. 4, which provides in pertinent part as follows:

### "SELF-INSURED RETENTIONS— OCCURRENCE POLICY—REDUCTION IN INDEMNITY ONLY

In consideration of the premium paid, it is hereby understood and agreed that Section I of the policy is amended by deleting existing paragraph B, and adding new paragraph B as follows:

B. (1) With regard to such insurance as is afforded by this policy, it shall be a condition precedent to the company's liability under this policy that the Named Insured make actual payment, by way of settlement or judgment of damages, of the amount(s) stated in the declarations and in any endorsements thereto as the Named Insured's Self-Insured Retention(s). The Named Insured's obligations to make actual payment for the Self-Insured Retention(s) shall not be satisfied in whole or in part by the payment by the Named Insured of:

(a) any hospital, medical or funeral charges incurred in the adjustment, investigation or defense of any claim,

(b) any sums paid or payable as salaries, wages compensation, fees, charges, interest or expenses for doctors, nurses, attorneys, investigators and any other persons, as a result of the adjustment, investigation or defense of any claim, and

(c) any other expenses incurred in the adjustment, investigation or defense of any claim.

The Named Insured's obligation to make actual payment for the Self-Insured Retention(s) shall only be satisfied by payment by the Named Insured of actual damages for bodily injury or property damage to which this insurance applies. The company shall only be liable for ultimate net loss over and above the amount(s) stated in the declarations as the Named Insured's Self-Insured Retention(s), subject to the limits of liability stated in the declarations and subject to the terms, exceptions, limitations and conditions of the policy."

On May 4, 1990, Carl and Deborah Hooper filed a complaint in the circuit court of Cook County against certain defendants including

Lester, premised on the theories of strict product liability and negligence. In 1991, shortly after the filing of the aforementioned lawsuit, Lester filed a petition in the United States Bankruptcy Court for the Northern District of Ohio pursuant to chapter 7 of the United States Bankruptcy Code. The Hoopers filed a responsive motion to lift the resulting automatic stay of proceedings with respect to Lester in order to permit the Hoopers to continue their lawsuit against Lester. An agreed order modifying the stay of proceedings was entered on November 7, 1991, by the United States Bankruptcy Court, vacating the automatic stay "to the extent of the debtor's insurance coverage."

Home subsequently filed a motion in the United States Bankruptcy Court seeking an order modifying the automatic stay to permit it to initiate a declaratory judgment action seeking a declaration that Home had no obligation to indemnify Lester in the underlying lawsuit unless and until actual payment was made by Lester of the entire amount of its $250,000 per occurrence self-insured retention.

On November 18, 1994, Home filed a two-count complaint seeking a determination that, under the subject policy, notwithstanding the bankruptcy of Lester, it had no obligation to indemnify Lester or to pay the Hoopers in connection with any judgment or settlement entered against it unless and until such time as Lester made actual payment to the Hoopers of the entire $250,000 self-insured retention amount. Home also sought a declaration that it had no drop down obligation to assume Lester's liability to pay the first $250,000 of damages or judgment, even though it might be liable for the balance of said claims and damages up to $1 million.

The Hoopers filed a counterclaim seeking a declaration that Home was required to fully indemnify Lester, irrespective of Lester's inability to make any of the actual payment of the claimed retention amount. Alternatively, the Hoopers sought a declaration that Home was obligated to indemnify Lester for that portion of the judgment or settlement exceeding $250,000, irrespective of Lester's inability to pay the claimed retention amount.

The trial court granted summary judgment for Home and against the Hoopers, rejecting the Hoopers' argument that the self-insured retention provision of the subject policy violated section 388 of the Illinois Insurance Code (Code) as well as rejecting the Hoopers' assertions that Home was required to drop down and pay Lester's self-insured retention if Lester became bankrupt or otherwise insolvent. Specifically, the trial court held that actual payment of the $250,000 self-insured retention by Lester was a condition precedent to coverage under the Home policy. The Hoopers appeal from this ruling.

On appeal, Home asserts that section 388 provides that a direct action may be maintained against an insurer only after a judgment obtained against the insured is returned unsatisfied because of the insured's insolvency or bankruptcy. The relevant provision of section 388 provides:

"[T]hat in case a certified copy of a judgment against the insured is returned unsatisfied ***, then an action may be maintained by the injured person or his or her personal representative against such company under the terms of the policy and subject to all of the conditions thereof for the amount of the judgment in such action not exceeding the amount of the policy." 215 ILCS 5/388 (West 1994).

The necessity of obtaining a judgment as a prerequisite to proceeding against the insurer under section 388 was affirmed by this court in *Mar San v. Insurance Co. of North America*, 86 Ill. App. 3d 64, 407 N.E.2d 969 (1980), which held that the statute:

"presupposes that a judgment will be recovered against the insured and permits a direct action to be brought against the insurance company in case execution on the said judgment has been returned unsatisfied, and eliminates from the consideration of the court any defense which might have been urged by the insurance company to the effect that the insured was either insolvent or bankrupt. It does not give the injured party the right to bring a primary action against the insurance company before the liability has been established in the suit brought by him against the insured." *Mar San*, 86 Ill. App. 3d at 66-67.

Here, Home maintains that since the Hoopers had never obtained a judgment against Lester, they could not bring suit under section 388.

In reply, the Hoopers assert that Home's declaratory judgment action also was premature. They cite cases holding as a general proposition that "[t]he question of whether or not an insurer has a duty to indemnify is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992). Attempts to obtain rulings on the duty to indemnify brought before a judgment is entered against the insured have been rejected. *Batteast v. Argonaut Insurance Co.*, 118 Ill. App. 3d 4, 454 N.E.2d 706 (1983); *Weber v. St. Paul Fire & Marine Insurance Co.*, 251 Ill. App. 3d 371, 622 N.E.2d 66 (1993).

This court permitted Home to file a surreply brief only as to this

last issue. Home asserts that the cases cited above are inapposite to the case at bar in that they involve situations where the court has determined that the insurer's duty to defend has arisen. Here, Home has denied that it has a duty to defend due to the condition precedent not having been satisfied. Further, the duty to defend is determined by the four corners of the underlying complaint, but the duty to indemnify is narrower in scope and can be dependent upon the facts presented during trial. In the above cases, holding that resolution of the duty to indemnify was premature, the "duty to indemnify" issue was dependent upon facts that might or might not have arisen in the underlying lawsuit.

■ In *Illinois State Medical Insurance Services, Inc. v. Cichon,* 258 Ill. App. 3d 803, 629 N.E.2d 822 (1994), the court held that a duty to indemnify issue may not be premature even before liability is incurred in the underlying claim. "[T]he question of coverage can appropriately be decided in a declaratory judgment action where the issues in the underlying suit are separable from those in the collateral proceeding. *** [T]he test is whether collateral estoppel would operate. If the issues are substantially the same so that collateral estoppel would apply to control the resolution of issues in the underlying suit, declaratory judgment would be premature. Such is not the case here." *Illinois State,* 258 Ill. App. 3d at 807, citing *Murphy v. Urso,* 88 Ill. 2d 444, 455, 430 N.E.2d 1079, 1084 (1981).

■ Here, Home argues, and we agree, the indemnification issues set forth in the declaratory action and motions for summary judgment involve purely legal questions regarding: (1) whether payment of the self-insured retention by Lester was a condition precedent that had to be satisfied prior to triggering coverage under the Home policy; (2) whether the instant policy was in violation of section 388 of the Illinois Insurance Code; and (3) whether the policy's coverage would drop down. These issues are not in any way reliant upon facts that will be presented in the underlying action.

On November 7, 1991, the bankruptcy court granted an agreed order allowing the declaratory action to proceed to determine if there are insurance proceeds awardable to the insured. That court vacated the automatic stay "to the extent of the debtor's insurance coverage." Based on the facts of the case, the applicable case law and the positions of the parties as expressed in their briefs and at argument, this court will invoke Supreme Court Rule 366(a)(1) (155 Ill. 2d R. 366(a)(1)) and will treat Home's complaint for declaratory judgment on the issue of indemnification as a complaint for declaratory judgment for determination of the extent of coverage provided by the Home policy.

Declaratory relief is available where a case presents "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375, 362 N.E.2d 298 (1977). It is also a long-standing principle that the courts favor declaratory judgment actions on the issue of policy coverage prior to adjudication of the underlying claim, especially when based on a present denial of coverage. *Safeco Insurance Co. v. Brimie*, 163 Ill. App. 3d 200, 205, 516 N.E.2d 577 (1987).

We next address the issue of whether the trial court properly determined that the self-insured retention provision of the subject policy was a condition precedent and did not constitute a violation of the Illinois Insurance Code.

■ Section 388 of the Illinois Insurance Code (215 ILCS 5/388 (West 1994)) requires all liability policies to contain a provision which guarantees that the insolvency or bankruptcy of the insured will not release the insurer from payment of damages from injuries or loss occurring during the term of the policy. Specifically, the statute states in pertinent part:

"No policy of insurance against liability or indemnity for loss or damage to any person other than the insured, for which any insured is liable, shall be issued or delivered *** unless it contains in substance a provision that the insolvency or bankruptcy of the insured shall not release the company from the payment of damages for injuries sustained ***." 215 ILCS 5/388 (West 1994).

The plain language of section 388 makes clear the legislative intent to prevent insurers from using the insured's bankrupt condition and resulting inability to make actual payment to satisfy a judgment or any portion thereof as grounds to avoid payment on a policy.

■ Home asserts that under the express language of the policy actual payment of the $250,000 is a condition precedent to its obligation to pay damages in excess of the self-insured retention limit. The subject policy issued by Home also contained the following provision: "[b]ankruptcy or insolvency of the named insured *** shall not relieve the company of any of its obligations hereunder." However, the unambiguous language of the self-insured provision contained in the instant policy would release Home from the obligation of payment under the policy due to Lester's bankruptcy. Lester's pending bankruptcy petition will almost certainly make it impossible for Lester to pay the initial $250,000 of any judgment. The operative effect of the language of the self-insured provision is directly contrary to the public policy as declared by the legislative enactment of section 388.

Home's characterization of the self-insured retention clause's requirement of "actual payment" by Lester of the retention amount as a condition precedent to its obligation to pay on the policy is also unavailing due to the same public policy considerations. Irrespective of the language contained in the subject policy, section 388 prevents Home from avoiding making payment of that portion of a judgment in excess of $250,000. Therefore, Home is obligated to pay any portion of an award to the Hoopers that is in excess of $250,000 up to $1 million.

In an endorsement of the policy at issue in this case, Home's liability is described as being limited to pay only those:

"[c]laims which resulted in the amounts cumulatively equaling or exceeding $250,000, such that the amounts paid or payable by the company, plus the amounts paid or potentially payable by the Named Insured, shall equal $1,000,000."

The express language of the policy clearly defines Home's liability to pay claims in amounts cumulatively exceeding $250,000, such that the amounts paid or payable by the company, plus the amounts paid or *potentially payable* by the named insured, shall equal $1 million. Under the aforementioned provision, Home is obligated to indemnify Lester for that portion of the judgment or settlement exceeding $250,000, irrespective of Lester's inability to pay the claimed retention amount.

Lastly, Lester asserts that Home's coverage was required to drop down and pay Lester's self-insured retention if Lester became bankrupt or insolvent. In reviewing the language in the policy, it is clear that there is no drop down provision requiring Home to pay the first $250,000 under these circumstances. In this case, Home's obligation is similar to that of an excess insurer's obligation to provide coverage when an underlying insurer has become insolvent. While courts have held that an excess insurer has an obligation to provide coverage when an underlying insurer has become insolvent, with coverage beginning where the unpaid underlying insurance was to have left off, the excess insurer is not responsible for liability below limits contained in the excess policy. *Hartford Accident & Indemnity Co. v. Chicago Housing Authority*, 12 F.3d 92, 96 (7th Cir. 1993); *Hudson Insurance Co. v. Gelman Sciences, Inc.*, 921 F.2d 92, 95 (7th Cir. 1990). Therefore, we hold that Home retains the obligation to cover any judgment in excess of $250,000 but is not obligated for the first $250,000. The trial court's granting of Home's motion for summary judgment on the issue of drop down coverage is affirmed.

For the aforementioned reasons, the decision of the trial court is

634

reversed in part and affirmed in part, and this cause is remanded with instructions to proceed consistent with this opinion.

Reversed in part and affirmed in part; cause remanded with instructions.

GREIMAN, P.J., and THEIS, J., concur.