## In re COLUMBIA GAS TRANSMISSION CORP.

### Cathy GREINER, Plaintiff,

### v.

### COLUMBIA GAS TRANSMISSION CORP., et al., Defendants.

### No. Civ.A. 2:97–1126.

United States District Court, S.D. West Virginia, Charleston Division.

April 17, 1998.

Amos W. Perrine, Columbia Gas Transmission Corp., Charleston, WV, Lisa G. Beckerman, Lawrence Greenwald, Stroock, Stroock & Lavan, New York City, for Columbia Gas Transmission Corporation.

Timothy C. Bailey, Bucci & Chambers, Charleston, WV, for Cathy Greiner.

Mary H. Sanders, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, WV, Amos W. Perrine, Columbia Gas Transmission Corp., Charleston, WV, Lisa G. Beckerman, Lawrence Greenwald, Stroock, Stroock & Lavan, New York City, for Columbia Gas Transmission Corporation, a Delaware Corporation.

Benjamin N. Snyder, Charleston, WV, for Columbia Natural Resources, Inc., a Texas Corporation.

William L. Bands, Charleston, WV, Harry F. Bell, Jr., Bell & Associates, Charleston, WV, Deana LeFevre, Charleston, WV, for Mountaineer Gas Company, a West Virginia Corporation.

Johnnie E. Brown, Kelly R. Charnock, Shaffer & Shaffer, Charleston, WV, Nighbert Land Co.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant Columbia Gas Transmission Corporation's ("TCO") motion for summary judgment. The matter is ripe for review. For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendant TCO's motion.

### I. FACTUAL BACKGROUND

On July 31, 1991 TCO filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

Plaintiff Cathy Greiner alleges she was injured by TCO's negligently maintained gas well road adjacent to Route 52. Greiner alleges water runoff from the gas well road formed ice on Route 52, which she encountered while driving on February 7, 1995. Greiner did not file suit or give notice of her claim to TCO at that time.

On July 17, 1995 TCO filed its Second Amended Plan of Reorganization ("Plan")

and an accompanying Disclosure Statement. Notice of the confirmation hearing was published in numerous West Virginia newspapers.

On November 15, 1995 the Delaware Bankruptcy Court entered an order ("Confirmation Order") confirming the plan, as modified by the Confirmation Order. Notice of the confirmation hearing and the entry of the Confirmation Order was published in numerous West Virginia newspapers. Also noticed in these papers was the bar date for non-ordinary course administrative expenses. Greiner was not given personal notice of any bankruptcy proceeding involving TCO.

On July 16, 1997 Greiner commenced the instant action in the Circuit Court of Mingo County, West Virginia. On August 13, 1997 TCO removed.

On February 10, 1998 TCO moved for summary judgment, asserting (1) Greiner's claim was discharged by the Plan, Confirmation Order and Section 1141(d) of the Bankruptcy Code; and (2) the lawsuit violates the injunctive provisions of the Plan, Confirmation Order and Section 524 of the Bankruptcy Code.

## II. DISCUSSION

### A.  Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of

law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 814, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va. 1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

### B.  Whether Claim Discharged in Bankruptcy

None of the parties apparently disagrees about whether the claim is dischargeable. Neither Plaintiff Greiner, Defendant Mountaineer Gas nor Defendant Nighbert Land ("Nighbert") challenge TCO's argument Plaintiff's claim was discharged by the Plan, Confirmation Order and Section 1141(d) of the Bankruptcy Code. Accordingly, the Court finds the claim discharged as to TCO and **DISMISSES** Greiner's claims against TCO.

### C.  Whether Co–Defendants Retain Possible Claims for Contribution or Indemnity

■ Mountaineer Gas and Nighbert argue they have potential claims for contribution

and/or indemnity against TCO. Specifically, Mountaineer Gas argues such claims were not discharged in bankruptcy because they have not yet arisen or arose post-confirmation. In its reply brief, TCO concedes the argument "assuming ... Mountaineer and/or Nighbert did not have notice of the Plaintiff's claims against them until after November 1995." TCO's Reply Brief at 5. None of the parties has presented evidence as to when Mountaineer and Nighbert became aware of Plaintiff's claims. Because there is a genuine issue of material fact extant, the Court **DENIES** TCO's motion for summary judgment as between TCO and Mountaineer Gas and Nighbert. Accordingly, TCO is dismissed as a Defendant to Plaintiff Greiner's claims, but remains as cross-claim defendant.[1]

### D. Whether TCO Must Remain a Party Defendant to Allow Plaintiff and Co–Defendants Access to TCO's Insurer

■ TCO's sole insurance coverage for this type of claim is an excess insurance policy through AEGIS. The policy states AEGIS "shall indemnify the INSURED for any and all sums which the INSURED shall become *legally obligated to pay* as ULTIMATE NET LOSS by reason of liability imposed upon the INSURED by law ... because of BODILY INJURY, PERSONAL INJURY ...." Ex. A, Movant's reply (emphasis added). The insurer is liable "for ULTIMATE NET LOSS in excess of the UNDERLYING LIMITS as stated in Item 6A or 6B of the Declarations, whichever is

applicable." *Id.* TCO's applicable underlying limit is $200,000. *Id.* Thus, for claims within the policy, AEGIS will indemnify TCO for any amount above $200,000 TCO is "legally obligated to pay," including certain defense costs.

Greiner, Mountaineer Gas and Nighbert[2] maintain, even if summary judgment in favor of TCO is appropriate, TCO should not be dismissed as a party defendant. They argue:

> In jurisdictions which do not permit a suit to be brought directly against an insurer, it is appropriate for a court to allow a suit to continue against a party to establish its liability for the harm alleged....
>
> West Virginia is one such jurisdiction which does not permit such suits directly against the insurer....
>
> Numerous other courts have held that a tort claimant may seek to proceed against a discharged debtor only for the purpose of recovering against the debtor's insurer.

Mountaineer Gas resp. at 6–7 (citations omitted). In reply, TCO argues (1) its excess policy differs substantially from insurance policies in the cases cited and (2) requiring it to remain a party defendant violates the "fresh start" policy of the Bankruptcy Code.

■ Section 524(a) of the Bankruptcy Code enjoins actions against a debtor subsequent to discharge.[3] 11 U.S.C. § 524(a). "A bankruptcy discharge and the concomitant injunction against subsequent actions are designed to give the debtor a financial 'fresh start.'" *In re Jet Florida Systems, Inc.*, 883

1. "TCO concedes that Mountaineer, Nighbert and/or [Columbia Natural Resources] are not precluded from asserting direct claims against TCO for contribution and/or indemnity if such co–Defendants are ultimately held liable by this Court." TCO's Reply Brief at 5.

2. These parties will be collectively referred to as "nonmovants."

3. Specifically, the provision states, in relevant part:
   (a) A discharge in a case under this title—
   ...
   (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.
11 U.S.C. § 524(a).

F.2d 970, 972 (11th Cir.1989) (citing Thomas H. Jackson, *The Fresh Start Policy in Bankruptcy Law,* 98 Harv.L.Rev. 1393, 1396–97 (1985)).

Section 524(e), however, states, "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." Relying on this provision, many courts have allowed actions to establish the debtor's liability in order to collect from the debtor's insurer. *See, e.g., In re Edgeworth,* 993 F.2d 51, 54 (5th Cir.1993); *Green v. Welsh,* 956 F.2d 30, 33 (2d Cir.1992); *Jet Florida Systems,* 883 F.2d at 972–73; *see also In re Honosky,* 6 B.R. 667 (Bkrtcy. S.D.W.Va.1980) (lifting the automatic stay "to the extent of the Debtor's insurance coverage"). Indeed, the Eleventh Circuit has noted the language of § 524(a) does not preclude such actions because they are not for "the personal liability of the debtor." *Jet Florida Systems,* 883 F.2d at 973.

The instant case differs markedly from the cases noted above. First, instead of a primary insurer, only an excess insurer is available, one whose liability is not triggered until TCO is "legally obligated to pay" a sum. TCO argues it will never be legally obligated to pay a sum in this case, because Plaintiff's claim was discharged in bankruptcy. *See supra* page 718.

Moreover, TCO, not a primary insurer, is responsible for the defense of the lawsuit. In the opinions cited by the nonmovants, courts often expressed concern about whether there would be cost to the debtors. For example, the Eleventh Circuit stated,

We are, however, concerned by the prospect that [allowing the suit to continue] in this case would frustrate the fresh-start policy embodied in the Code in one way— by requiring the bankrupt to spend sums in defending this lawsuit. We are cognizant that in actions such as these, the cost of litigation can sometimes surpass the actual amount of liability. Therefore, to allow suits of this nature to go forward could possibly have the effect of draining funds that would more properly be used in the revitalization of the reorganized corporation.

*Jet Florida Systems,* 883 F.2d at 976. Similarly, the Fifth Circuit summarized § 524(a) as allowing a suit "as long as the costs of defense are borne by the insurer and there is no execution on judgment against the debtor personally." *Edgeworth,* 993 F.2d at 54 (stating also, "threats to Edgeworth's pocketbook [in the form of defense costs or the insurer's denial of coverage] might require a different result under § 524."). *See also In re Catania,* 94 B.R. 250, 253 (Bankr.D.Mass. 1989).

The Court has located one opinion encompassing a situation similar to the instant one. In *Home Insurance Co. v. Hooper,* 294 Ill. App.3d 626, 229 Ill.Dec. 129, 691 N.E.2d 65 (1998), the debtor's policy in question had a provision making the debtor's payment of the $250,000 self-insured retention ("SIR") a condition precedent to the insurer's coverage. An Illinois statute required insurance policies to state the insured's bankruptcy would not release the insurer from payment of damages under the policy. The Illinois Appellate Court held that the excess insurer was bound to provide insurance coverage above the debtor's SIR. The court rejected the condition-precedent provision, determining that it was "directly contrary to the public policy" espoused by the statute. *Id.,* 229 Ill. Dec. at 134, 691 N.E.2d at 70.

This Court has not been presented such a direct pronouncement of the applicable public policy by the West Virginia courts or legislature. Without such guidance, the Court applies the law to the facts presented.

First, there is no coverage under the policy for Greiner's claims. The policy clearly and unambiguously states there is no coverage until TCO is "legally obligated to pay" a sum. The precision of the policy language suggests the parties specifically contracted for this result. Because Greiner's claim was discharged in bankruptcy, TCO will not be "legally obligated to pay" compensation to Greiner. Apparently TCO did not purchase coverage for claims once discharged in bankruptcy. The Court will enforce the policy as written; therefore, there is no insurance coverage for Greiner's claims.

Second, it would violate the Bankruptcy Code's fresh-start policy to require TCO to defend against Greiner's claims. TCO has provided evidence that it, not AEGIS, is responsible for costs of defending the lawsuit. As one court has stated, "Any economic loss to the Debtor would ... result in the violation of the statutory injunction of 11 U.S.C. § 524(a)." *Perez v. Cumberland Farms, Inc.*, 213 B.R. 622, 624 (D.Mass.1997). Requiring TCO to pay the costs of litigating its liability on Greiner's claim, which costs could be quite high, would violate the fresh-start policy of the Bankruptcy Code. *See Jet Florida Systems*, 883 F.2d at 976. Accordingly, for these reasons, the Court will not allow the action to continue against TCO except as co-defendants may have claims for contribution and/or indemnity against TCO.

## III. CONCLUSION

For the foregoing reasons, the Court (1) **GRANTS** in part and **DENIES** in part Defendant TCO's motion; and (2) **DISMISSES** Plaintiff's claims against Defendant TCO.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.