**In re ALLIED PRODUCTS CORPORATION,**
Debtor.

No. 00 B 28798.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 6, 2003.

Steven B. Towbin, Kathleen H. Klaus, Jeremy C. Kleinman, D'Ancona & Pflaum LLC, Chicago, IL, for Debtor.

John D. Shugrue, Paul Walker–Bright, Zevnik Horton, Chicago, IL, for ITT Industries, Inc.

Arthur J. Howe, Jason M. Rosenthal, Schopf & Weiss, Chicago, IL, George M. Plews, Jeffrey D. Featherstun, Indianapolis, IN, for City of South Bend, Indiana.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Chief Judge.

This Chapter 11 case has come before the court on the debtor's motion to sell certain of its liability insurance policies back to the carriers who issued them—for the general benefit of its estate—and to enjoin parties with claims under these policies from taking any action against the carriers. As discussed below, (1) the insurance policies are property of the estate that the debtor may sell, but not without providing adequate protection for the in-

terests of parties in the policies; and (2) under applicable nonbankruptcy law, parties with claims under liability insurance policies have an ultimate right to recover from the issuing carriers. Since this interest is not protected by the debtor's proposed sale, the debtor's motion will be denied.

### Jurisdiction

Federal district courts have exclusive jurisdiction over bankruptcy cases. *28 U.S.C. § 1334(a).* Pursuant to *28 U.S.C. § 157(a),* district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such a reference of the pending case. When presiding over a referred case, a bankruptcy judge has jurisdiction, under *28 U.S.C. § 157(b)(1),* to enter appropriate orders and judgments in core proceedings within the case. A motion to sell property of the estate is a core proceeding under *28 U.S.C. § 157(b)(2)(N).* This court therefore has jurisdiction to enter a final ruling on the pending matter.

### Findings of Fact

The few facts relevant to this decision are not in dispute. For several years prior to its bankruptcy filing, Allied Products, Inc., headquartered in Chicago, engaged in manufacturing operations in a number of states. In connection with these operations, Allied purchased general liability insurance from The Travelers Indemnity Company, the Insurance Company of North America (succeeded by Century Indemnity Company), and various affiliated entities. At the time of its bankruptcy filing, Allied was subject to claims that may have been covered by these policies, including environmental claims of ITT Industries, Inc. and the City of South Bend, Indiana.

Since the filing of its case, Allied has determined to liquidate its assets. On July 11, 2002, as part of this liquidation, Allied filed the pending motion, seeking to sell most of its liability insurance policies to the carriers who issued them, pursuant to a "buy-back" agreement, for a price of $3.5 million. At the initial hearing on this motion, the debtor acknowledged that the intent of the motion was to obtain funds from the insurance carriers for the general use of its estate, rather than for payments of claims that are covered by the policies. Accordingly, the court directed that notice of the debtor's motion be given to all potential policy claimants. In response to this notice, several claimants—including ITT Industries and the City of South Bend—filed objections to the proposed sale. After extended briefing, the court took the matter under advisement.

### Conclusions of Law

Allied's proposed "buy-back" sale of its liability insurance policies involves more than a simple transfer of its rights under the policies to the insurance carriers that issued them. In particular, Allied's motion requests two additional forms of relief affecting the holders of claims covered by the policies. First, Allied seeks a determination by this court, enforced by an injunction, that the proposed buy-back will satisfy all payment obligations of the insurance carriers under the policies, so that parties with claims covered by the policies would be allowed to assert those claims only against Allied. Second, Allied proposes that the payment to be received under the buy-back agreement would become part of its estate, available to all creditors, rather than being segregated for payment of claims covered by the policies.

 As the parties all acknowledge, Allied's liability insurance policies are property of its estate in bankruptcy, under the broad definition of § 541(a) of the Bank-

ruptcy Code (Title 11, U.S.C.). *See In re Edgeworth*, 993 F.2d 51, 55 n. 13 (5th Cir.1993) (collecting authorities); *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir.1989) ("A policy of insurance is an asset of the estate.") Accordingly, Allied's policies are subject to sale under § 363(b)(1) of the Code, which permits a trustee (or debtor in possession) to sell estate property out of the ordinary course of business, after notice and hearing.

The difficulty presented by Allied's sale motion is the objecting parties assert an interest in the policies proposed to be sold—specifically, they assert a right under the policies to enforce their claims against the insurance carriers that issued the policies—and Allied's motion would sell the policies free and clear of any such interest, by enjoining actions against the insurance carriers. Although estate property subject to interests of other parties may be sold free and clear of the other parties' interests under § 363(f), any such sale must provide adequate protection for those interests.[1] **The legislative history of § 363(f) reflects this requirement: "Sale under this subsection is subject to the adequate protection requirement. Most often, adequate protection in connection with the sale free and clear of other interests will be to have those interests attached to the proceeds of the sale."** H.R.Rep. No. 95–595, at 345 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6302. Here, since Allied declines to allow liability claims to be asserted against the proceeds of its proposed buy-back, and since it provides no other form of adequate protection for the holders of such claims, the buy-back arrangement can only be ap-

proved if the claim holders have no interest in the liability policies.

Allied recognizes that its motion requires a determination that policy claim holders have no right to payment from the insurers. In this regard, it argues (1) that "[a]ny interest the [claim holders] have in the Policies ... must be determined by the substantive law of Illinois," and (2) that neither Illinois law nor the policies themselves "confer any benefit" on policy claim holders. *Allied Products Corporation's Omnibus Reply*, filed Sept. 6, 2002, at 4–5.

Allied's choice of law argument is correct. The Seventh Circuit has not determined whether the choice of law rules of the forum state are binding in bankruptcy cases, or whether a bankruptcy court may exercise independent judgment as to the appropriate source of substantive law. *See In re Morris*, 30 F.3d 1578, 1581–82 (7th Cir.1994). However, this court would adhere in any event to the rule applied in Illinois—that the domicile of the insured should determine the law applicable to a liability policy covering operations in several states. *Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 526–27, 211 Ill.Dec. 459, 655 N.E.2d 842, 845 (1995). Given that Allied's principal place of business was in Illinois during all relevant times, and that its operations were conducted in several states, Illinois law should determine the rights of parties under the policies.

However, contrary to the balance of Allied's argument, both Illinois law and the policies in question do confer on policy claim holders a right to payment from the issuers of the policies. Illinois, like most states, has a public policy prohibiting "an

---

1. Under § 363(e), parties with an interest in estate property must be adequately protected in connection with any sale of the property: "[O]n request of an entity that has an interest in property ... proposed to be ... sold ... the court ... shall prohibit or condition such ... sale ... as is necessary to provide adequate protection of such interest."

injured party from recovering ... against an insurance carrier on account of the negligence of its insured prior to obtaining a judgment against the insured." *Richardson v. Econ. Fire & Cas. Co.*, 109 Ill.2d 41, 51, 92 Ill.Dec. 516, 485 N.E.2d 327, 329–30 (1985), citing *Marchlik v. Coronet Ins. Co.*, 40 Ill.2d 327, 332, 239 N.E.2d 799, 802–03 (1968). However, this rule does not preclude ultimate recovery against the insurer. As explained in Joachim Zekoll, *Liability for Defective Products & Services*, 50 Am J. Comp. L. 121, 156–57 (2002):

> In most states, an injured party cannot sue the liability insurance company directly, at least not initially. Instead, the plaintiff is required to sue the insured and exhaust all remedies against that party before he is entitled to bring an action against the insurer. The main rationale for this position is to protect insurance companies against overly sympathetic juries which might be more inclined to find for the plaintiff and award unjustified damages if they are aware of insurance coverage.... If the judgment against the insured tortfeasor remains unsatisfied, the plaintiff may bring a direct action against the insurance carrier.

Indeed, an Illinois statute mandates that insurance policies provide for direct action against the insurance carrier if necessary to collect a judgment against the insured. Section 388 of the Illinois Insurance Code, 215 ILCS 5/388 (2002) provides:

> No policy of insurance against liability ... shall be issued or delivered in this State ... unless it contains in substance a provision that the insolvency or bankruptcy of the insured shall not release the company from the payment of damages for ... loss occasioned during the term of such policy, and stating that in case a certified copy of a judgment against the insured is returned unsatisfied ..., then an action may be maintained by the injured person ... against such company under the terms of the policy ... for the amount of the judgment in such action not exceeding the amount of the policy.

Section 388 was applied in *Home Ins. Co. v. Hooper*, 294 Ill.App.3d 626, 229 Ill.Dec. 129, 691 N.E.2d 65 (1998), to require an insurance carrier to make direct payment to a policy claimant despite the fact that the corporation covered by the insurance policy was in bankruptcy, and hence could not make the self-insured retention payment that the policy mandated. The court read the statute as reflecting "the legislative intent to prevent insurers from using the insured's bankrupt condition and resulting inability to make actual payment to satisfy a judgment ... as grounds to avoid payment on a policy." 294 Ill.App.3d at 632, 229 Ill.Dec. 129, 691 N.E.2d at 69–70. Thus, under § 388, a claim covered by a liability insurance policy in Illinois, once pursued to judgment against the insured, must be satisfied up to the policy limits—if not by collection against the assets of a solvent insured entity, then against the insurance carrier directly.

The insurance policies at issue here are fully consistent with § 388 of the Illinois Insurance Code in providing that policy claimants have a right to payment from the insurance carrier. Allied points to the language of one policy issued by an affiliate of the Insurance Company of North America, which states: "We will pay *the insured* for the 'ultimate net loss' ... that the insured becomes legally obligated to pay as damages ..." (emphasis added). *Exhibits in Support of Allied Products Corporation's Omnibus Reply*, filed Sept. 6, 2002, Ex. A, p. 1. However, the same policy provides that "[a] person or organization may sue us to recover on ... a final

judgment against an insured." *Id.* at Ex. A, p. 10. The other policies cited by Allied provide that the insurance carrier will "pay *on behalf of* the Assured ... all sums which the Assured shall be obligated to pay" for covered liabilities. *See, e.g., id.,* Ex. B, p. 2 (emphasis added). A payment "on behalf of" Allied, in the context of a liability insurance policy, can only reasonably be understood to mean a payment to the policy claimant, not a payment directly to Allied. And a provision for direct payment to policy claimants is quite reasonable: since the insurance carrier would be liable under Illinois law to pay the claimant directly in the event of the insured's insolvency, direct payment to the claimant protects against the possibility of the insurance carrier paying twice on the same claim.

Finally, a series of decisions from the Seventh Circuit further recognizes that claimants under a liability insurance policy have an ultimate right to payment from the insurance carrier. *Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 179 n. 1 (7th Cir.1994); *In re Hendrix,* 986 F.2d 195, 197 (7th Cir.1993); and *In re Shondel,* 950 F.2d 1301, 1307 (7th Cir.1991), all hold that a debtor discharged in bankruptcy is nevertheless subject to a nominal suit by claimants under a liability insurance policy, for purposes of obtaining a judgment that may be enforced against the carrier that issued the policy.

Because the policy claimants who object to Allied's proposed sale of its liability insurance policies do have an interest in payment under those policies that is not adequately protected by the terms of Allied's motion to sell, the motion must be denied.[2] **A separate order will be issued to that effect.**

---

**2.** The obstacle to Allied's motion addressed in this opinion is not the only ground raised by the objecting policy claimants. Even if Allied had provided for the sale proceeds to be segregated for purposes of paying policy claims, as in *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 837 F.2d 89, 93 (2d Cir.1988), there would remain objections to the adequacy of the sales price in the motion. These additional objections are not resolved here.