**In re OES ENVIRONMENTAL, INC., Debtor.**

**No. 8:03–BK–18897–ALP.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 3, 2004.

Alberto F. Gomez, Jr., Morse & Gomez, PA, Tampa, FL, for Debtor In Possession.

Denise E. Barnett, United States Trustee, Tampa, FL, for U.S. Trustee.

Carrie Beth Baris, Bush Ross Gardner Warren & Rudy, Tampa, FL, for Creditor Committee.

### ORDER ON MOTION OF BROWNS BRIDGE MARINE, INC. TO LIFT STAY TO PERMIT ACTION AGAINST DEBTOR'S INSURER

(Doc. No. 246)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

The matter under consideration in this yet to be confirmed Chapter 11 Case of OES Environmental, Inc. (Debtor) is a Motion to Lift Stay to Permit Action against the Debtor's Insurer (Doc. No. 246), filed by Browns Bridge Marine, Inc. (Browns Bridge). In the Motion, Browns Bridge seeks the entry of an Order by this Court permitting it to continue an adversary proceeding commenced in Browns Bridge's own Chapter 11 case against this Debtor's insurer.

This Court held a preliminary hearing on the Motion together with the Objections interposed by both the Debtor and the Official Committee of Unsecured Creditors (Committee). In the Objections, the Debtor and Committee voiced concern that the Debtor's estate would be responsible for the self-insured retention (SIR), in the amount of $50,000, which could be considered a priority administrative claim. Browns Bridge argued that any expenses would be a pre-petition unsecured claim not entitled to administrative priority.

This Court initially entered an Order on May 20, 2004 lifting the automatic stay *nunc pro tunc* for the limited purpose of allowing the adversary proceeding already filed by Browns Bridge to be deemed filed without being in violation of the automatic stay but stayed any further prosecution of the adversary proceeding pending this Court's determination of the classification of the SIR. This Court requested the submission of case law by the parties supporting their respective positions.

This Court has reviewed the post-submission briefs and now finds and concludes as follows. The facts relevant to this discrete and narrow issue are summarized as follows. Browns Bridge subleased a marina and boat repair facility on Lake Lanier, in Georgia. Browns Bridge was attempting to sell its sublease and hired an individual to perform an environmental inspection of the subleased premises. Browns Bridge alleges that this individual subcontracted the testing to the Debtor and that the work was done negligently. The Debtor disputes the allegation that the work was done negligently.

■ It is without dispute that Browns Bridge seeks relief from the stay to continue its action against the Debtor, with the express provision that it waives any claim against the Debtor's estate and is solely seeking relief against the Debtor's insurance provider, Greenwich Insurance Company (Greenwich). Greenwich issued the Debtor a "claims made and reported" policy, bearing policy number PEC001143401, with the policy period from April 1, 2003 to April 1, 2004[1] (the Policy).

On September 11, 2003, the Debtor filed for Chapter 11 relief under the Bankruptcy Code. It is without dispute that the Policy was in effect at the time of the filing of the bankruptcy. It is likewise without dispute that the claim for negli-

---

1. A copy of the policy was attached as Exhibit "A" to the Debtor's post-submission brief.

gence was made in October of 2003 and was reported by the Debtor in March of 2004 and appears to therefore, be initially covered under the Policy, notwithstanding the Policy's various exclusions and other disclaimers and conditions set forth in the Policy.

The relevant provisions of the Policy are summarized as follows:

(1) Item 4: Retention: $50,000 each CLAIM

(2) VI. Limits of Liability and Retention.

C. *Retention:* The Retention Amount stated in Item 4. of the Declarations shall be borne by the INSURED and shall not be insured. It shall include DAMAGES and CLAIMS EXPENSE, whether or not DAMAGES are paid.

(3) Endorsement # 002

Section IX. Other Conditions, is amended as follows:

N. Choice of Law: All matters arising hereunder ... shall be determined in accordance with the law and practice of the State of New York. In the event of direct or indirect conflict between the laws of the State of New York and the laws of the State of Florida, the laws of the State of Florida would apply.

(Policy, Ex. A to Debtor's Post–Submission filing).

Although this Court initially requested post-submission filings regarding whether or not the SIR would be an unsecured claim or an administrative claim, upon further review of the governing case law, the proposition urged by the parties missed the issue because the question to be answered by this Court should be: What is an insured/debtor's liability to its insurance company and/or the injured party with respect to the satisfaction of the SIR once the insured has filed for bankruptcy

protection and is not in a position to satisfy the SIR.

■ Greenwich argued that the SIR should have administrative priority status similar to the payment of an insurance premium post-petition. In order to qualify for a Section 503(b)(1)(A) administrative priority claim, the claim must satisfy the following test: the debt must both (1) arise from a transaction with the debtor-in-possession and (2) be beneficial to the debtor-in-possession in the operation of its business. *In re Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984); *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976). This Court disagrees with Greenwich inasmuch as the satisfaction of the SIR is not similar to the payment of a premium because it is without dispute that the insurance coverage is already provided for by the insurance company. There is no *quid pro quo* with the satisfaction of the SIR as between the insured and the insurer.

Greenwich· also argues that under the terms and conditions of the Policy, there is no duty to indemnify or defend until the SIR has been *exhausted* and cites to *T.Y. Lin International v. Hyundai Marine & Fire Ins. Co.,* 1997 WL 703778 at *3 (N.D.Cal.1997)(emphasis supplied). This Court recently had the occasion to analyze the *T.Y. Lin* case and several other cases involving the exhaustion of an SIR and the impact upon a debtor. *See In re Apache Products, Co.,* 311 B.R. 288 (Bankr. M.D.Fla.2004). However, unlike in *T.Y. Lin* and *Apache Products,* the language in the Greenwich Policy regarding the SIR is not as in depth and does not use the term "exhausted" but merely states that the $50,000 is "borne by" the Debtor. The facts and circumstances surrounding the SIR language in *T.Y. Lin* and *Apache Products* are distinguishable from the fact pattern in this case.

Once again, there is little if any reported decisions with respect to this fact pattern which as stated above is not whether the SIR has to be exhausted before liability or the duty to defend is triggered but rather, the effect that the filing of bankruptcy has on the insured/debtor's liability to both the insurer and/or the injured party.

Although somewhat factually distinct, the district court in Pennsylvania dealt with this discrete and narrow issue in the case of *In re Amatex Corp.,* 107 B.R. 856 (E.D.Pa.1989), *judgment aff'd,* 908 F.2d 961 (3d Cir.1990), *judgment aff'd without op,* 908 F.2d 964 (3d Cir.1990). In *Amatex,* the debtor sought declaratory judgment that its excess insurer was obligated to indemnify the debtor and defend against asbestos-related claims. In its sixth count of its complaint, the debtor sought a declaration that the "self-insured retention provision" contained in the Stonewall policy, one of the insurance companies who was sued by Amatex, represented an unsecured claim against the debtor's estate. *Id.* at 860. In essence, the debtor wanted the insurance company to pay the entire amount of the policy limit and then be relegated to an unsecured claim against the debtor for the amount of the SIR. *Id.* at 871.

In its opinion, the district court noted that it was unable to locate any applicable case law to provide it with assistance and stated as follows:

> "Self-insurance" has been defined as [t]he practice of setting aside a fund to meet losses instead of insuring against such through insurance. A common practice of business is to self-insure up to a certain amount, and then to cover any excess with insurance. Black's Law Dictionary 1220 (5th Ed.1979).
>
> Self insurance is best compared to the familiar "deductible" amount referenced in most insurance policies. It is com-

mon knowledge to anyone who has ever filed an insurance claim subject to same that the deductible must be exhausted before the liability of the insurer begins.

> Giving this meaning to the term "self-insurance" and noting that the $25,000 in question is referred to as the amount of "self-insured retention" in the Stonewall policy several times in the text of that policy, it is clear to this court that Stonewall is liable for only for those amounts in excess of the self-insured retention. The self-insured retention is therefore not an amount that is owed by the Debtor to Stonewall but rather, represents the threshold of Stonewall's liability to the Debtor. We therefore declare that the self-insured retention amount set forth in the Stonewall policy is a limitation on Stonewall's liability under the policy.

*Id.* at 871–872. *See also, Kleban v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.,* 771 A.2d 39 (Pa.Super.Ct.2001). In *Kleban,* the court determined that to the extent that any award against the debtor was within the self-insured retention, the injured party could assert an unsecured claim against the debtor or its estate. If the amount was above, the insurer would satisfy that amount less the SIR.

▆▆▆▆ In light of the foregoing, this Court is satisfied that the stay should be lifted to allow Browns Bridge to proceed against the Debtor's insured, Greenwich. Greenwich is obligated to defend and indemnify the Debtor for the portion of any judgment or settlement exceeding $50,000, irrespective of Debtor's inability to pay the claimed retention amount. *See Home Insurance Company of Ill. v. Hooper,* 294 Ill.App.3d 626, 229 Ill.Dec. 129, 691 N.E.2d 65 (1998).

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Lift Stay to Permit Action against the Debtor's Insurer (Doc. No. 246) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DE-CREED that the automatic stay pursuant to 11 U.S.C. § 362(a) be, and the same is hereby, modified to permit Browns Bridge Marine, Inc. to pursue its claim against the Debtor's insurer in the adversary proceeding pending in Browns Bridge's own Chapter 11 case provided however, that Browns Bridge cannot assert a claim, either as an administrative claim or as an unsecured claim against the Debtor or its estate for any such amount that is within the SIR of $50,000.